UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:14-cv-00572-MOC

| | | |
|---|---|---|
| **OPAL SHAWONA BROWN,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM OF DECISION** |
| | ) | and |
| Vs. | ) | **ORDER** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the court on Plaintiff's Motion for Judgment on the Pleadings (#12), Plaintiff's supplemental brief regarding the impact of the Fourth Circuit's recent decision in Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015) on her claims (#16), and the Commissioner's Motion for Summary Judgment (#22). Having carefully considered such motions and reviewed the pleadings, the court enters the following findings, conclusions, and Order.

## FINDINGS AND CONCLUSIONS

### I.    Administrative History

Plaintiff filed an application for disability insurance benefits and supplemental security income on April 8, and April 11, 2011, respectively, alleging disability beginning on June 15, 2008 (Tr. 181, 187). Her applications were denied initially and again upon reconsideration (Tr. 114, 128). An administrative hearing was held on May 7, 2013, before administrative law judge Frank Armstrong ("the ALJ"). (Tr. 27). On June 6, 2013, the ALJ issued a written decision denying Plaintiff's applications. (Tr. 12). Plaintiff requested review of the ALJ's decision with

the Appeals Council, (Tr. 11), but such request was denied on September 4, 2014, (Tr. 1-3), making the ALJ's decision the final decision of the Commissioner of Social Security ("Commissioner"). See 42 U.S.C. § 405(g); 20 C.F.R. § 404.981. Thereafter, Plaintiff timely filed this action.

## II.     Factual Background

It appearing that the ALJ's findings of fact are supported by substantial evidence, the court adopts and incorporates such findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

## III.     Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not de novo, Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perales, 402 U.S. at 401 (internal citations omitted). Even if the undersigned were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if supported by substantial evidence. Hays, 907 F.2d at 1456.

The Fourth Circuit has explained substantial evidence review as follows:

> the district court reviews the record to ensure that the ALJ's factual findings are supported by substantial evidence and that its legal findings are free of error. If the reviewing court decides that the ALJ's decision is not supported by substantial evidence, it may affirm, modify, or reverse the ALJ's ruling with or without remanding the cause for a rehearing. A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The

record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence. If the reviewing court has no way of evaluating the basis for the ALJ's decision, then the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.

Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) (internal citations and quotations omitted).

## IV.     Substantial Evidence

### A.     Introduction

The court has read the transcript of Plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the extensive exhibits contained in the administrative record. The issue is not whether a court might have reached a different conclusion had it been presented with the same testimony and evidentiary materials, but whether the decision of the ALJ is supported by substantial evidence.  For the reasons explained herein, the court finds that it is not.

### B.     Sequential Evaluation

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled.  The Commissioner evaluates a disability claim under Title II pursuant to the following five-step analysis:

   a.     An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

   b.     An individual who does not have a "severe impairment" will not be found to be disabled;

   c.     If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

   d.     If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

e.     If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

20 C.F.R. § 404.1520(b)-(f). The burden of proof and production during the first four steps of the inquiry rests on the claimant. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. Id. In this case, the Commissioner determined Plaintiff's claim at the fourth step of the sequential evaluation process.

## C.     The Administrative Decision

With an alleged onset date of June 15, 2008, the issue before the ALJ was whether Plaintiff was disabled between that date through the date of decision. At step one, the ALJ found that Plaintiff had not worked since the alleged onset date of her disability. (Tr. 17). At step two, the ALJ found that Plaintiff had the following severe impairments: systemic lupus erythematosus and fibromyalgia. (Tr. 17). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 19). The ALJ then found that Plaintiff had the residual functioning capacity[1] ("RFC") to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b). Based on that finding, the ALJ at step four concluded that Plaintiff was able to perform her past relevant work as a nursery school attendant and daycare director. (Tr. 21). Accordingly, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act.

---

1 RFC is a statement of the most a person can do in a work setting in light of his or her impairments, and any related symptoms, such as pain. See 20 C.F.R. § 404.1545.

### D. Discussion

#### 1. *Plaintiff's Assignments of Error*

Plaintiff alleges that the ALJ's decision is not supported by substantial evidence because the ALJ: 1) did not perform a proper listing analysis; 2) improperly evaluated Plaintiff's credibility; 3) improperly evaluated Plaintiff's RFC; and 4) failed to assess Plaintiff's capacity to perform relevant functions despite contradictory evidence in the record and failed to explain how Plaintiff could perform those functions for a full workday. The court has carefully considered Plaintiff's assignments of error in light of the record, and for the reasons explained herein, finds that remand is appropriate.

#### 2. *First Assignment of Error: Listing Analysis*

##### a. Severe Impairments

Plaintiff first argues that the ALJ erred by not finding her anxiety and depression to be severe impairments. At step two of the sequential evaluation, Plaintiff must show the existence of a medically determinable impairment, and then show it is severe. 20 C.F.R. 404.1520(a)(4)(ii), Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. See 20 C.F.R. 404.1521 and 416.921; Social Security Rulings ("SSR"s) 85-28, 96-3p, and 96-4p. Basic work activities are those necessary to do most jobs, including walking, standing, sitting, lifting, carrying, seeing, hearing, speaking, using judgment,

responding appropriately to supervision, co-workers and usual work situations, and understanding, carrying out, and remembering simple instructions. 20 C.F.R. § 404.1521.

When an ALJ finds at least one severe impairment, all impairments, both severe and non-severe, are considered in assessing a claimant's RFC. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(2); SSR 96-8p. As the ALJ in this case found that Plaintiff's lupus and fibromyalgia were severe impairments, "the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence." Pompa v. Comm'r of Social Security, 2003 WL 21949797, at *1 (6th Cir. Aug. 11, 2003). Here, Plaintiff has not sufficiently identified how any of the impairments she contends were severe resulted in work-related limitations greater than those found by the ALJ during the relevant time period.

In arguing that the ALJ erred by finding that her anxiety and depression were not severe, Plaintiff puts the same evidence in front of this court that she put before the ALJ and asks it to reach a different conclusion. As noted above, so long as the ALJ's decision was supported by substantial evidence, the court will uphold his decision. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir.2001) (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)) (internal quotation marks omitted) (first and second alterations in original). After closely reviewing the record before the ALJ, as well as his reasoning, this court finds that substantial evidence supports his severity analysis.

In discussing the medical evidence related to Plaintiff's anxiety and depression in the context of whether they were severe impairments, the ALJ explicitly stated, "The record also

shows that the claimant has been treated for anxiety and depression; however I find that these impairments do not impose greater than minimal limitations on the claimant's ability to perform work-related activity." (Tr. 18). He then discussed in detail her treatment history and the medical opinions of several medical professionals. (Tr. 18). For example, the ALJ stated:

> In May 2011, during her Consultative Examination with psychologist Dr. Davis, the claimant reported that she had been treated for depression since 1996 (Exhibit 5F) . . . However, the record does not reflect any significant work activity limitations with regard to depression. She reported to Dr. Davis that she was able to do every household task and that she needs no assistance with personal care (Exhibit 5F). She also stated that her hobbies consisted of reading and researching information online. Although she reported that she had limited contact with the public due to her symptoms of pain, she stated that she still loved people and enjoyed being around them. Dr. Davis found that the claimant was able to understand, retain and follow simple information and that she would have little difficulty in understanding more complex information and reported no social limitations.

(Tr. 18). The ALJ also considered Plaintiff's course of treatment:

> In terms of psychiatric treatment, the record shows her condition responds very well to treatment. The claimant began counseling in March 2011 at Psychiatric Services of the Carolinas. In her initial evaluation, she reported increased symptoms of depression and anxiety and was prescribed Klonopin and Lexapro (Exhibit 14F) … However, shortly after beginning counseling, the claimant showed improvement. In a follow-up appointment in July 2011, she reported that medication was helpful. In August 2011, she reported that she was "doing okay," although her depression increased when her pain intensified. In March 2012, her counselor's treatment notes indicated only "mild" depressive symptoms and generalized anxiety and no panic attacks. In July 2012, she reported that she was "doing very well" and that the medication worked well for her. In August 2012, she reported that she was doing well, that medications were working well without side effects and that she had improved energy.

(Tr. 18). The court thus finds that the ALJ adequately discussed the evidence of record in assessing Plaintiff's mental impairments.

Additionally, while Plaintiff points to several instances in the record that she believes support her argument that her anxiety and depression are severe, there is ample evidence in the

record to support the ALJ's finding. As this court has noted before, an ALJ need not explicitly explain his consideration of every piece of information in the record. See Upchurch v. Colvin, 5:13-CV-669-FL, 2014 WL 4352097 (E.D.N.C. Sept. 2, 2014); Brittain v. Sullivan, No. 91–1132, 956 F.2d 1162, at *6 (4th Cir. 1992) ("An ALJ need not comment on all evidence submitted."). In support of her argument, Plaintiff notes that she was prescribed medication and received treatment for depression and anxiety. (Pl.'s Mem. 4). While true, these facts do not show that Plaintiff suffered from disabling limitations. Plaintiff also cites her own, subjective complaints of mental health symptoms. (Pl.'s Mem. 4-5). For example, Plaintiff cites Dr. Hill's August 31, 2010 treatment note which indicates that, as a result of her fibromyalgia, Plaintiff avoids "stressful people" and "stressful relationships" and "tries to eat well and practice yoga." (Tr. 305). However, such statements are not objective evidence that help an ALJ determine a claimant's ability to perform work activity. Significantly, Dr. Hill's psychological examinations also yielded findings that she was "pleasant," alert and oriented, and had normal speech, good insight, and good judgment. (Tr. 304-5). Plaintiff also cites Dr. Shukia's records, but those records likewise fail to show the ALJ erred. They show that Plaintiff denied major depression, (Tr. 385, 386), was "doing OK" (Tr.387), and that her symptoms were often "mild" and "improving." (Tr. 385-92). The court thus finds that ample evidence in the records exists to support the ALJ's finding that Plaintiff's anxiety and depression do not cause more than a minimal limitation on her ability to perform work-related activities.

The court also notes that Plaintiff has in no way shown how she was prejudiced by the classification of her anxiety and depression as non-severe. The ALJ found at the second step of the sequential evaluation process that Plaintiff had two "severe" impairments. (Tr. at 17), then

proceeded to the next step. (Tr. at 17-18). An error at step two is harmless provided the adjudicator proceeds to step three because when an ALJ finds one severe impairment, both severe and non-severe impairments must be considered in determining RFC. See Stacey v. Astrue, No. 1:09-CV-181, 2011 WL 841356 at *3 (W.D.N.C. Jan. 28, 2011). Indeed, the ALJ explicitly stated in his decision that in formulating the RFC, he was required to "consider all of [Plaintiff's] impairments, including impairments that are not severe." (Tr. at 17) (citing 20 C.F.R. §§ 404.1520(e); 404.1545; 416.920(e); SSR 96-8p).

Finding no error in the ALJ's assessment of the severity of Plaintiff's impairments, and finding no harm to Plaintiff in light of the such severity analysis, the court overrules Plaintiff's first assignment of error in this regard.

**b. Listing 14.02**

Plaintiff next argues that the ALJ failed to assess her impairments under Listing 14.02. The regulations provide a "Listing of Impairments" that are deemed sufficiently severe to prevent a person from any gainful activity, regardless of age, education, or work experience. See 20 C.F.R. § 404.1525(a). A claimant will be found disabled if his impairments meet the duration requirement and meet or equal the medical criteria of a listing. Id. § 404.1520(d). "Failure to sufficiently address a relevant listing is ground for remand." Drotar v. Colvin, No. 7:13-CV-265-FL, 2015 WL 965626, at *4 (E.D.N.C. Mar. 4, 2015) (citing Cook v. Heckler, 783 F.3d 1168 (4th Cir. 2013)). The ALJ must identify the relevant listed impairments and compare each of the listed criteria to the evidence of the claimant's symptoms so that a reviewing court may assess whether substantial evidence supports the determination. Id. However, an ALJ need only analyze a claimant's impairment where there is factual support in the record that the impairment meets

such listing. See Drane v. Colvin, No. 1:10CV901, 2014 WL 408753, at *4 (M.D.N.C. Feb. 3, 2014) (citing Cook, 783 F.2d at 1172; Ketcher v. Apfel, 68 F.Supp.2d 629, 645 (D.Md.1999)). "Neither the Social Security law nor logic commands an ALJ to discuss all or any of the listed impairments without some significant indication in the record that the claimant suffers from that impairment." Ketcher, 68 F. Supp.2d at 645. Additionally, because the listings essentially streamline the disability decision-making process, they require satisfaction of more stringent criteria than what is ordinarily required to meet the statutory standard for disability. See Sullivan v. Zebley, 493 U.S. 521, 532-33 (1990). In order for a claimant to show that an impairment matches a listing, "it must meet all of the specific medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Id. at 530 (citing SSR 83–19). The burden is on the claimant "to show that his impairment matches a listing," and that the condition "meet[s] all of the specific medical criteria." Id.

Here, in considering step three of the sequential evaluation process, the ALJ concluded that the claimant did not suffer from an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart 1, App. 1. See (Tr. 19); 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. Plaintiff argues that the ALJ erred in failing to assess her severe impairment of systemic lupus erythematosus ("SLE") under the relevant listings[2] and that she meets the qualifications of Listing 14.02B, which states:

14.02 Systemic lupus erythematosus. As described in 14.00D1[3]. With:

_____

2 Plaintiff concedes that fibromyalgia has not been identified as a listed impairment.
3 SLE is defined in 14.00D1 as follows:

> a chronic inflammatory disease that can affect any organ or body system. It is frequently, but not always, accompanied by constitutional symptoms or signs (severe fatigue, fever, malaise, involuntary weight loss). Major organ or body system involvement can include: Respiratory (pleuritis, pneumonitis), cardiovascular (endocarditis, myocarditis, pericarditis, vasculitis), renal (glomerulonephritis), hematologic (anemia, leukopenia, thrombocytopenia), skin (photosensitivity),

….

B. Repeated manifestations of SLE, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:

1. Limitation of activities of daily living.
2. Limitation in maintaining social functioning.
3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. § Pt. 404, Subpt. P, App. 1.

While Plaintiff argues that she meets all of the criteria for the "B" Listing, she does not cite any evidence in the record indicating that she has two of the mentioned constitutional symptoms or signs. The court, upon review, does not find any. The ALJ's decision discussed Plaintiff's SLE and associated symptoms in his decision. He noted her reports of back and joint pain, aching and fatigue, and some rashes. (Tr. 19-20). Plaintiff notes that the record also indicates that she experiences multiple joint pain, Raynaud's syndrome, back pain and spasms, fatigue, poor sleep, depression, and anxiety. <u>See</u> Pl. Mem (#13) at p. 6 (citing Tr. 276, 286, 294, 295, 300, 328, 336). However, none of these symptoms support a finding under the Listing 14.02 and the court therefore finds no error in the ALJ's determination that Plaintiff did not meet or equal any of the listed impairments. The court therefore overrules Plaintiff's first assignment of error in this regard.

---

neurologic (seizures), mental (anxiety, fluctuating cognition ("lupus fog"), mood disorders, organic brain syndrome, psychosis), or immune system disorders (inflammatory arthritis). Immunologically, there is an array of circulating serum auto-antibodies and pro- and anti-coagulant proteins that may occur in a highly variable pattern.

20 C.F.R. § Pt. 404, Subpt. P, App. 1.

### 3. Second Assignment of Error: Plaintiff's Credibility

Plaintiff next argues that the ALJ erred in evaluating her credibility. The ALJ is solely responsible for determining the RFC of a claimant. 20 C.F.R. § 404.1546(c). In determining RFC, the ALJ must consider the functional limitations and restrictions resulting from the claimant's medically determinable impairments. SSR 96-8p. Inasmuch as RFC is determined at the fourth step of the sequential evaluation process, the burden is on the claimant to establish that he or she suffers from a physical or mental impairment which limits functional capacity. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).

In reviewing Plaintiff's claim regarding the ALJ's credibility determination, the court notes at the outset that because the ALJ "had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). The court evaluates claims of pain and other subjective symptoms under the two-step process developed by the Fourth Circuit in Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996), which corresponds with the Commissioner's relevant rulings and regulations. See 20 C.F.R § 404.1529; SSR 96-7p.[4]

The first step requires the ALJ to determine whether there is "objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." Craig, 76 F.3d at 594. If the ALJ finds such an impairment, he must then proceed to the second step and assess "the intensity

---

[4] "The purpose of this Ruling is to clarify when the evaluation of symptoms, including pain, under 20 CFR 404.1529 and 416.929 requires a finding about the credibility of an individual's statements about pain or other symptom(s) and its functional effects; to explain the factors to be considered in assessing the credibility of the individual's statements about symptoms; and to state the importance of explaining the reasons for the finding about the credibility of the individual's statements in the disability determination or decision." S.S.R. 96-7p (statement of purpose).

and persistence of the claimant's pain, and the extent to which it affects [his] ability to work." <u>Id.</u> at 595; <u>see</u> <u>also</u> 20 C.F.R. §§ 416.929(c)(1), 404.1529(c)(1); SSR 96-7p. The ALJ must consider the following: (1) a claimant's testimony and other statements concerning pain or other subjective complaints; (2) claimant's medical history and laboratory findings; (3) any objective medical evidence of pain; and (4) any other evidence relevant to the severity of the impairment. <u>Craig</u>, 76 F.3d at 595; 20 C.F.R. § 404. 1529(c); SSR 96-7p.  The term "other relevant evidence" includes: a claimant's activities of daily living; the location, duration, frequency and intensity of their pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of medications taken to alleviate their pain and other symptoms; treatment, other than medication, received; and any other measures used to relieve their alleged pain and other symptoms. <u>Craig</u>, 76 F.3d at 595.

  If the ALJ does not find a claimant's statements to be credible, the ALJ must provide specific reasons supported by the evidence. 20 C.F.R. § 404.1529(c)(4); SSR 96–7P. <u>See also</u> <u>Hammond v. Heckler</u>, 765 F.2d 424, 426 (4th Cir.1985) ("credibility determinations…should refer specifically to the evidence informing the ALJ's conclusion"). "This duty of explanation is always an important aspect of the administrative charge, and it is especially crucial in evaluating pain, in part because the judgment is often a difficult one, and in part because the ALJ is somewhat constricted in choosing a decisional process." <u>Id.</u> (internal citations omitted).

  Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (Tr. 20). As noted above, the ALJ is tasked

with the duty to provide specific reasons for discrediting a claimant's testimony. While generally, such boilerplate language is unhelpful to a reviewing court engaging in substantial evidence review, the court here finds that the ALJ has satisfied his duty of explanation through his otherwise thorough written decision.

Throughout his decision, the ALJ discussed Plaintiff's subjective allegations of pain and provided appropriate analyses of why he refused to give them full credit. The ALJ properly concluded that Plaintiff's complaints were not entirely credible because her allegations of totally disabling symptoms were inconsistent with other evidence, including medical opinions, the objective medical evidence, and Plaintiff's statements regarding her own activities of daily living. (Tr. 20-21). In explaining his credibility determination, the ALJ wrote as follows:

> The record fails to demonstrate that the claimant's symptoms of pain due to fibromyalgia and lupus rise to a level of total disability. During a routine physical examination in August 2009 (the first medical encounter of record), the claimant reported back pain and joint pain, but indicated that she was feeling well in general (Exhibit 1F). She had full range of motion in all joints and normal muscle strength. Follow-up appointments show continued reports of generalized joint pain, but no significant concerns or reports of extreme pain or worsening pain are seen. In November 2010, she reported significant improvement upon starting Plaquenil and Mirapex. She reported some aching and fatigue, but otherwise did not report any abnormalities. She also reported that she had recently started yoga. In February 2011, she reported that overall she was doing "pretty good." She reported that her symptoms were under control and that she was still doing yoga. . . . No abnormalities were indicated in her physical examination. In July 2011, she reported symptoms of rashes and fatigue to her rheumatologist (Exhibit 4F). However, during a follow-up in October 2011, she reported that her symptoms had been stable overall (Exhibit 8F). She stated that nortriptyline had been very helpful with her sleep. She reported that she had been exercising, riding, doing yoga and walking. . . . Dr. Sakin, the examining physician, reported that she ambulated without difficulty and did not indicate any specific concern for her condition. Dr. Sakin even recommended daily aerobic exercise for the claimant. Treatment notes in the following month do not indicate any instability. During a follow-up in March 2013, the claimant reported that her symptoms had remained unchanged and that she had no new joint pain, stiffness, swelling or skin lesions. She reported some "mild" Raynaud's symptoms and stated that she wanted stronger pain medication.

However, her physical exam did not indicate any worsening symptoms. Her joint exam was negative for any synovitis or tenderness. Her muscle exam showed no definite active tender joints and only a "few" scattered tender points in the upper back and neck were found.

(Tr. 19). The ALJ thus appropriately discussed Plaintiff's statements concerning pain and other subjective complaints.

The ALJ also discussed opinion evidence from several medical consultants. For example, the ALJ stated that he gave significant weight to Plaintiff's treating physicians Dr. Dayal and the primary care physicians at Dallas Family Medicine and Gaston Family Health Services, who treated Plaintiff for various physical conditions over the course of the relevant time period. The ALJ also discussed Dr. Reynolds' consultative examination report, which found her symptoms and physical exam consistent with lupus and fibromyalgia. (Tr. 20; 338). The ALJ noted that while Dr. Reynolds reported that Plaintiff would have difficulty sustaining activities for any period of time, she had no restriction in climbing, stooping, pushing or pulling, lifting or carrying. Id. Dr. Reynolds also observed no abnormalities in musculoskeletal or neurological exams, though opined that she might experience pain and fatigue as a result of crouching, crawling, and bending. Id. Ultimately, the ALJ disagreed with Dr. Reynolds' finding that Plaintiff would be unable to maintain sustained work activity because Plaintiff's own reports of exertional activities (performing household chores, exercising, and doing yoga) were inconsistent with allegations of disability and because the medical notes of record indicate that Plaintiff's condition is manageable with treatment. Id. Finally, the ALJ also discussed the weight given to Dr. Sakin and the findings of the state agency medical consultants. He explained that Dr. Sakin's finding that Plaintiff would miss work up to four days per month was inconsistent with his own

medical findings of Plaintiff being in a stable condition, and that the medical consultants were given some, but not controlling weight.

The ALJ thus satisfied his duty of explanation by showing that claimant's testimony and other statements concerning pain were not consistent with her medical history, laboratory findings, and other objective medical evidence of pain. While Plaintiff asks the court to consider several instances in the record where she believes the evidence supports her subjective complaints, the court first notes that in doing so, Plaintiff asks the court to reweigh the evidence previously before the ALJ, which is not the role of this court on substantial evidence review. See Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). Additionally, the court notes that the evidence that Plaintiff cites in support of her arguments largely consists of her own statements to her doctors, which are not objective evidence. See Pl. Mem at pp. 10-11 (citing Plaintiff's "reports" to Dr. Hill); (Tr. 294-95; 390). Here, the court finds that the ALJ had sufficient evidence to conclude that Plaintiff's allegations about the severity of her symptoms were unsupported by the evidence in the record and that the ALJ properly analyzed Plaintiff's credibility. The court therefore overrules Plaintiff's second assignment of error.

### 4. Third Assignment of Error: Formulation of RFC

Plaintiff also contends that the ALJ erred in evaluating her RFC by determining that she could perform the full range of light work. The regulations define "light work" as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for

long periods of time.

20 C.F.R. § 404.1567(b). Plaintiff contends that she is incapable of performing a full

range of light work because she cannot frequently lift and carry ten pound objects, stand

or sit for six out of eight hours per day, or perform frequent pushing and pulling because

her systemic lupus and fibromyalgia cause her pain and stiffness in multiple joints,

increased fatigue, anxiety, depression, and Raynaud's syndrome.

     As noted above, RFC is a statement of the most a person can do in a work setting in light

if his impairments, and any related symptoms, such as pain. 20 C.F.R. § 404.1545. RFC assesses

an individual's ability to do sustained, work-related physical and mental activities in a work

setting on a regular and continuing basis, meaning eight hours a day for five days a week, or an

equivalent work schedule. SSR 96-8P, 1996 WL 374184, at *1. In determining RFC, the ALJ

must consider the functional limitations and restrictions resulting from the claimant's medically

determinable impairments, including the impact of any related symptoms. Id. An ALJ formulates

a claimant's RFC based on all the relevant evidence in the record. 20 C.F.R. § 404.1545.

"The RFC assessment must first identify the individual's functional limitations or restrictions

and assess his or her work-related abilities on a function-by-function basis." SSR 96-8P, 1996

WL 374184, at *1. The RFC assessment must address both the exertional and nonexertional

capacities of the individual. Id. at *5. Nonexertional capacity considers work-related limitations

and restrictions that do not depend on an individual's physical strength, such as "an individual's

abilities to perform physical activities such as postural (e.g., stooping, climbing), manipulative

(e.g., reaching, handling), visual (seeing), communicative (hearing, speaking), and mental (e.g.,

understanding and remembering instructions and responding appropriately to supervision)...it

also considers the ability to tolerate various environmental factors (e.g., tolerance of temperature extremes)." Id. Nonexertional capacity must be expressed in terms of work-related functions. Id. at *6. Only after that function-by-function analysis has been completed may RFC "'be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.'" Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (quoting SSR 96–8p, 61 Fed.Reg. at 34, 475). Additionally, SSR 96-8p "explains that the [RFC] assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Id. (internal quotation marks and citations omitted).

The court has carefully considered the Fourth Circuit's recent decision in Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015).[5] The Court in Mascio declined to adopt a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," noting that such rule "would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" Id. at 636 (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)). Instead, the court found that remand may be appropriate where "'an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" Id. (quoting Cichocki, 729 F.3d at 177). The Court in Mascio was particularly concerned with the ALJ's failure to discuss the claimant's ability to perform relevant functions for a full workday. Id. See also Newton v. Colvin, No. 3:14-CV-371-RJC-DSC, 2015 WL 4411110, at *3;

---

[5] While the court extended the briefing deadlines in this case for the specific purpose of allowing the parties to brief the Fourth Circuit's recent decision in Mascio, the Government did not respond to any of Plaintiff's arguments made pursuant to the decision or otherwise address the decision in its brief.

Scruggs v. Colvin, 2015 WL 2250890 at *4-5 (W.D.N.C. May 12, 2015) (W.D.N.C. July 20, 2015). Applying that standard, the Mascio Court concluded that remand was appropriate in that case because the ALJ had determined that the claimant could perform certain functions, but "said nothing about [the claimant's] ability to perform them for a full workday," despite conflicting evidence in the record on that point. Id. Because the court was "left to guess about how the ALJ arrived at his conclusions on [the claimant's] ability to perform relevant functions," remand was appropriate. Id. at 637.

Here, the ALJ determined that Plaintiff had the RFC to "to perform work that requires lifting and carrying of weight no more than 20 pounds occasionally and 10 pounds frequently; no more than 6 hours of standing/walking per workday; no more than 6 hours of sitting per workday; and no more than occasional stopping and crouching," (Tr. 20), which are the requirements of light work as defined in the regulations. The ALJ did not perform an explicit function-by-function analysis. But that failure alone is not enough to require remand. Instead, the court must determine whether the ALJ's RFC analysis considered the relevant functions, whether his decision provides a sufficient basis to review his conclusions, and, ultimately, whether that decision is supported by substantial evidence in the record. As noted above, the ALJ discussed much medical evidence of record relevant to Plaintiff's conditions and also made findings as to Plaintiff's credibility. The ALJ did not, however, make any findings in light of the evidence as to how Plaintiff's limitations affect her ability to perform work-related functions, or her ability to perform them for a full workday. The ALJ's discussion of the medical evidence does not clearly relate to his findings as to Plaintiff's ability to lift, carry, walk, or stand, which are the activities required for light work. Despite the fact that the ALJ found that she would be able to do all of

those things, (Tr. 20), he did not explain how the medical evidence of record supported such a finding. It is not obvious to the court on review how the ALJ arrived at such conclusions. In light of the directives in <u>Mascio</u> and the absence of a finding as to Plaintiff's ability to perform light work for a full work day, the court is left to guess as to how the ALJ concluded that Plaintiff could perform the relevant functions in light of her limitations. The court thus finds that substantial evidence does not support the ALJ's decision and that remand is therefore appropriate. <u>See</u> <u>Mascio</u> 780 F.3d at 636-37. <u>See also</u> <u>Wedwick v. Colvin</u>, No. 2:14CV267, 2015 WL 4744389, at *21 (E.D. Va. Aug. 7, 2015) ("on the one issue that is specifically referenced in <u>Mascio</u>—the ability to function for an entire workday—the ALJ did not do a function-by-function analysis, or explain how his RFC took account of the relevant medical records."); <u>Carver v. Colvin</u>, No. 1:13CV13, 2015 WL 4077466, at *10 (M.D.N.C. July 6, 2015) ("the ALJ neglected to assess relevant functional limitations of Plaintiff-the ability to walk or stand for a full workday-which may preclude Plaintiff's ability to perform light work"); <u>Scruggs v. Colvin</u>, No. 3:14-CV-00466-MOC, 2015 WL 2250890, at *5 (W.D.N.C. May 13, 2015) ("The court finds that an explanation of how Plaintiff's mental limitations affect her ability to perform work-related functions, as well as her ability to perform them for a full workday, to be necessary here."); <u>Claggett v. Colvin</u>, No. CIV. TMD 13-2952, 2015 WL 4925167, at *8 (D. Md. Aug. 17, 2015).

The court also takes the opportunity to note that much of the evidence that Plaintiff encourages the court to consider "contradictory" to the RFC was either addressed and discredited by the ALJ or constitutes subjective statements made to medical professionals that were simply recorded by such professional, and which do not appear to be objective evidence. However, on

remand, the ALJ shall be required to address the evidence of record relating to the functions listed in the "light work" category. As noted above, while an ALJ is not tasked with the responsibility of discussing every piece of medical evidence in the record, where there is conflicting evidence regarding factors relevant to a claimant's RFC, the ALJ should discuss it. See Mascio, 780 F.3d at 636 (finding remand appropriate where an ALJ fails to assess a claimant's capacity to perform certain functions in light of contradictory evidence).[6]

E.    **Conclusion**

The court has carefully reviewed the decision of the ALJ, the transcript of proceedings, Plaintiff's motion and brief, the Commissioner's motion and brief, and Plaintiff's assignments of error. Review of the entire record reveals that the decision of the ALJ is not supported by substantial evidence. See Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir.1990). Finding that there was not "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Perales, 402 U.S. at 401 (internal citations omitted), Plaintiff's Motion for Summary Judgment will be granted, the Commissioner's Motion for Summary Judgment will be denied, and the decision of the Commissioner will be reversed and remanded for further proceedings consistent with this Order. Specifically, on remand, the Commissioner shall be required to assess Plaintiff's ability to

---

6 SSR 96-8p also concisely provides:

In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

Id.

perform work-related functions for a full workday in accordance with the standards articulated

by the Fourth Circuit in <u>Mascio</u> and explain how the evidence supports such analysis. The court

therefore enters the following Order.

## ORDER

**IT IS, THEREFORE, ORDERED** that:

1)     Plaintiff's Motion for Judgment on the Pleadings (#12) is **GRANTED** and Commissioner's Motion for Summary Judgment (#22) is **DENIED**;

2)     the decision of the Commissioner, denying the relief sought by Plaintiff, is **VACATED** and this action is **REMANDED** to the Commissioner, pursuant to Sentence Four of 42 U.S.C. § 405(g), for further development on the matter of Plaintiff's ability to perform certain functions relevant to the RFC for a full workday; and

3)     this action is **DISMISSED.**

Signed: August 31, 2015

Max O. Cogburn Jr.
United States District Judge